[Civ. No. 15368. Second Dist., Div. One. Feb. 17, 1947.]

CLARA ELIZABETH FISHER et al., Respondents, v. GLENN C. LOSEY, Appellant.

Wm. J. Clark and Morris Lavine for Appellant.

Barrick & Wright for Respondents.

DRAPEAU, J. pro tem.—One of the plaintiffs is a real estate broker. His wife is a party plaintiff because she is the purchaser named in an agreement of purchase and sale of real property which was enforced by judgment of trial court. Temple City is in Los Angeles County, a short distance east of the city of Los Angeles, and is growing very rapidly. Contemplating establishing a real estate office in Temple City, plaintiff looked over the business part of the area in which he wished to locate his office; centered on one particular spot, and then searched the records of Los Angeles County to ascertain who owned two lots which he wanted. Finding defendant's name listed as owner of the lots, he called the defendant on the telephone, and asked him if he would consider a sale.

In this conversation plaintiff told the defendant that he was a realty broker and had a client who would purchase the property. Defendant stated that he would sell the property but would have to ascertain what investment he had in it and would then advise plaintiff of the price. On the next day plaintiff again called the defendant; defendant said he would take $6,000 for the two lots. Plaintiff asked him if that would include a 5 per cent commission; defendant said "Yes." Plaintiff said "then that would be a price of $5,700.00 net to you," and the defendant said, "Yes."

On the following Monday, September 29, 1945, plaintiff called at defendant's house. He introduced himself, reminded the defendant of the purchase price they had theretofore discussed, and offered defendant $5,500 for the two lots. This offer defendant refused; whereupon plaintiff told the defendant that he was the purchaser and would pay defendant $5,700 for the property. This offer defendant accepted. Then plaintiff filled in the blanks on a printed form of agreement of purchase and sale, read it to defendant, and plaintiff wife and defendant and his wife signed it. As part of the transaction a check for $500 was delivered to defendant to bind the bargain. In the agreement title was to be taken in the name of plaintiff wife.

The parties proceeded immediately to a bank, where escrow papers were prepared, evidencing substantially the agreement above recited, and were signed by the plaintiffs and defendant, Glenn C. Losey.

Within the next few days defendant proceeded to make a belated inquiry as to the value of the lots, convinced himself that they were worth $10,000 rather than $5,700, and notified the escrow holder that he refused to go further with the sale. Then followed the complaint in the superior court by plaintiffs to enforce the agreement of purchase and sale, and a judgment by the trial court for specific performance.

The first ground of appeal is that under the circumstances narrated, a fiduciary relationship existed between plaintiff and defendant. The vice of plaintiff's conduct lies in the fact that he inquired the price, and led defendant to believe that he was to get a commission of $300 from a fictitious purchaser, and thus secured for himself a net price at $5,700. Such conduct by a real estate broker is certainly not to be commended. However, it was the province of the trial court to draw the inference that there was subsequently a disclosure of the fact that the plaintiff was the real party in interest, and that the defendant then with full knowledge thereof agreed to the sale. The principle is stated in Rest. Agency, page 877:

"a. Facts to be disclosed. One employed as agent violates no duty to the principal by acting for his own benefit if he makes a full disclosure of the facts to an acquiescent principal and takes no unfair advantage of him. Before dealing with the principal on his own account, however, an agent has a duty, not only to make no misstatements of fact, but also to disclose to the principal all material facts fully and completely. A fact is material within the meaning of the rule stated in this Section if it is one which the agent should realize would be likely to affect the judgment of the principal in giving his consent to the agent to enter into the particular transaction on the specified terms. Hence, the disclosure must include not only the fact that the agent is acting on his own account (see sec. 389), but also all other facts which he should realize have or are likely to have a bearing upon the desirability of the transaction from the viewpoint of the principal. This includes, in the case of sales to him by the principal, not only the price which can be obtained, but also all facts affecting the desirability of sale, such as the likelihood of a higher price

being obtained later, the possibilities of dealing with the property in another way, and all other matters which a disinterested and skillful agent advising the principal would think reasonably relevant.''

It is elementary that any broker acts in a fiduciary capacity and owes an affirmative duty of disclosure to his principal. (*Haswell* v. *Costellenos*, 126 Cal.App. 427 [14 P.2d 846]; *Feckenscher* v. *Gamble*, 12 Cal.2d 482 [85 P.2d 885] (involving a real estate broker); *Jolton* v. *Minster Graf & Co.*, 53 Cal.App.2d 516 [128 P.2d 101]; *Baird* v. *Madsen*, 57 Cal.App.2d 465 [134 P.2d 885].)

This then leaves the question whether there was any misrepresentation by the plaintiff as to the transaction. Appellant contends this was so in reference to the purchase price of $5,700. Again we find a substantial conflict in the testimony, which it was the province of the trial court to resolve. Witnesses, including the defendant, testified that the market value of the lots was $10,000. One of plaintiff's witnesses testified that they were worth $5,500; another, $6,000. Therefore, this court may not disturb the findings of the trial court in this respect. Appellant urges as a second ground of reversal that the contract of purchase and sale is uncertain, and therefore unenforceable.

The agreement is as follows:

''RECEIVED FROM HOWARD B. FISHER $500.00 (CHECK) to apply on purchase price of $5,700.00 for TWO lots No. 569 and 570, Block ——, Tract 6561 in the County of Los Angeles, State of California, also known as On southside of Las Tunas Street, between Sunset and Temple Aves, Temple City, Calif.

''Subject to County taxes for fiscal year 1944-1945; bonds and assessments with unpaid balance not to exceed $NONE; covenants, conditions, restrictions, reservations, rights, right-of-way and easements of record, if any; mortgage or trust deed of record with unpaid balance of $None;

''Seller agrees that this property will be delivered free and clear of all bonds, assessments, or Mattoon expense.

''Buyer will deposit an additional $5200.00 and his necessary instruments in escrow with the Bank of America—South Pasadena Branch within 5 days. Each party to pay his customary escrow charges.

''The seller is to furnish at his expense in said escrow a Deed, and a Policy of Title Insurance showing title condition

as provided for above. In the event same is not furnished within a reasonable time, then buyer shall have the right to cancel this agreement and his deposit is to be returned.

"If buyer fails to deposit the money and his instruments and complete the purchase as provided herein, then the amounts paid shall be forfeited, to the seller.

"Interest, taxes, rents and fire insurance are to be prorated to date deed is recorded.

"The sale of said property is made subject to owner's approval and deposit is to be refunded if owner does not approve said sale NOW.

"There are no oral agreements not contained herein.

"I agree to sell said property    I agree to purchase said on above terms ———         property on above terms.

"Glenn C. Losey            Clara Elizabeth Fisher
      (Seller)                              (Buyer)
"Mrs. Hazel Losey"

Without specific enumeration thereof, this contract contains all of the essentials necessary for specific performance.

It is urged that the contract and escrow agreement must be regarded as one instrument, that the contract recites the receipt of $500 by defendant from plaintiff, whereas the escrow instructions recite that the deposit of the sum was made by Mrs. Fisher. This does not render the contract uncertain.

Appellant urges that the judgment is void or voidable upon its face and from an inspection of the judgment roll because the judgment was filed with the clerk, February 1, 1946, entered February 4, 1946, but the findings were not filed with the clerk until February 27, 1946, after the judgment. Upon the findings appears the following notation by the trial judge: "The foregoing Findings of Fact and Conclusions of Law having been signed on the First day of February, 1946 but through inadvertency having been misplaced, it is therefore ordered, adjudged and decreed that the foregoing Findings of Fact and Conclusions of Law be filed nunc pro tunc by the Clerk as of the First day of February, 1946. Collier, Judge of the Superior Court."

Filing of the findings, *nunc pro tunc*, was certainly in the interest of justice. That they were misplaced was in no sense the fault of the litigants, and it was proper to so file the findings.

Complaint is made of a ruling by the trial court sustaining objection to a question on cross-examination of an ex-

pert witness as to value. This question was as to the opinion of the expert as to value "at the present time." No authority is cited to support the proposition; and there was no abuse by the trial court of its discretion in curtailing the cross-examination of this witness.

It is urged that the findings are not sustained by the evidence, and a number of specific matters pointed out to support this contention. However, a fair and careful review of the record convinces us that the evidence supports the findings, and considering the function of the trial court to resolve conflicting testimony, the findings and judgment are correct.

Finally, it is argued that the judgment is erroneous in awarding interest on the sum of $5,700 from October 4, 1944, the date of its deposit with the escrow holder. A judgment for specific performance may include damages for delay in performance of the contract. (*Abbott* v. *76 Land & Water Co.*, 161 Cal. 42 [118 P. 425]; *Coleman* v. *Dawson*, 110 Cal.App. 201 [294 P. 13].)

The judgment is affirmed.

York, P. J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1947.