[Civ. No. 23530.   Second Dist., Div. One.   Oct. 9, 1959.]

**M. SLUSHER, Respondent, v. F. J. BUCKLEY et al., Appellants.**

[Civ. No. 23531.   Second Dist., Div. One.   Oct. 9, 1959.]

**G. S. CHAMBREAU et al., Respondents, v. F. J. BUCKLEY et al., Cross-Complainants and Appellants.**

Jean Wunderlich and Earle K. Stanton for Appellants.

Bodkin, Breslin & Luddy, George M. Breslin, Henry G. Bodkin, Jr., and Alvin B. Baranov for Respondents.

FOURT, Acting P. J.—These are separate appeals in two actions which were consolidated for trial in the superior court and which appeals, by stipulation of all parties involved, are presented on one set of briefs. The appellants in each instance are real estate broker F. J. Buckley and his wife, E. Haiss.

One action instituted by M. Slusher against Buckley, his wife and G. S. Chambreau was for rescission of a sale of certain real property commonly known as 674 South Crenshaw Blvd., Los Angeles, California, on grounds of fraud.

In this complaint, among other things, it was alleged that Buckley solicited Mrs. Margaret Slusher for authority to

negotiate a sale of her property in or about the month of May, 1955, representing to her that he could obtain a purchaser at $37,500; that Slusher verbally granted Buckley an exclusive right for 60 days to obtain a purchaser for her property, at a price of $37,500; that after the 60-day period had expired Slusher orally agreed to an indefinite extension of said exclusive agency; that on or about August 9, 1955, Buckley represented to Slusher that he had a purchaser, G. S. Chambreau, at a price of $33,000; that subsequently escrow instructions indicating a purchase price of $31,350, less an allowance of $300 for termite work, and containing a provision that Buckley was not acting as agent for the seller were presented to and signed by Slusher; that thereafter and on or about August 22, 1955, Buckley represented to Slusher that the termite work required would cost considerably more than $500 and Slusher consented to an amendment to the escrow instructions allowing a credit to the buyer for $500, with the buyer waiving the requirement that the termite work be performed; that Chambreau was a dummy purchaser acting for and on behalf of Buckley; that immediately following the sale by Slusher to Chambreau, Chambreau conveyed the property to Buckley's wife, E. Haiss, and that on or about January, 1956, upon discovery of the falsity of the representations made to her by Buckley, Slusher promptly served notice of rescission of her sale to Chambreau upon Chambreau, Buckley and his wife, and that they have refused to acquiesce in the rescission and have, in addition, retained rental proceeds derived from said property.

Findings of fact were made and include the following:

"5. It is true that on or about May 22, 1955, defendant F. J. Buckley solicited from plaintiff, and plaintiff then orally agreed to an indefinite extension of said exclusive agency.

"6. It is true that on or about August 10, 1955, defendant F. J. Buckley, without the knowledge or consent of plaintiff, purchased said real property from plaintiff and thereafter took record title thereto in the name of one G. S. Chambreau.

"7. It is true that on or about August 10, 1955, plaintiff executed and delivered a good and sufficient grant deed of said real property to said G. S. Chambreau which deed was thereafter recorded on or about August 31, 1955, in the office of the County Recorder of said Los Angeles County.

"8. It is true that under the terms of the contract of sale from plaintiff to defendant F. J. Buckley there were included

in the sale of real property the carpets in the building on the premises and the patio furniture situated on the premises so sold.

"9. It is true that said G. S. Chambreau took title to said real property from plaintiff at the request of and for the convenience of defendant F. J. Buckley as his nominee in trust for him.

"10. It is true that at no time did defendant F. J. Buckley disclose to plaintiff the fact that he, personally, had purchased said real property from plaintiff, his principal, or that G. S. Chambreau was in fact the nominee of defendant F. J. Buckley and had received title to said property in trust for him.

"11. It is true that plaintiff did not know until on or about December 19, 1955 that defendant F. J. Buckley had purchased said real property in the name of said G. S. Chambreau.

"12. It is true that in December, 1955 defendant F. J. Buckley caused the record title to said real property to be conveyed from said G. S. Chambreau to the said wife of defendant F. J. Buckley, in her maiden name, to wit: defendant, E. Haiss.

"13. It is true that in December, 1955, defendant F. J. Buckley caused the record title to said real property to be conveyed by defendant F. J. Buckley's said wife, E. Haiss, to Stanford Crocker, Inc., a corporation.

"14. It is true that Stanford Crocker, Inc. was and is a corporation owned and controlled by defendants F. J. Buckley and E. Haiss.

"15. It is true that plaintiff received from defendant F. J. Buckley, through escrow, the sum of $7,529.07, in cash, as part payment on the total agreed sales price for the said sale by plaintiff to said defendant F. J. Buckley, and that said defendant F. J. Buckley caused to be executed by said G. S. Chambreau, and delivered to plaintiff, a promissory note in the principal sum of $23,000.00 dated August 9, 1955, and a deed of trust, wherein Wilshire Escrow Company, a corporation, was named trustee, securing the payment of said note which trust deed was recorded on August 31, 1955 in the office of the County Recorder of said Los Angeles County.

"16. It is true that defendant F. J. Buckley expended the sum of $95.03 for the benefit of plaintiff as a pro rata payment of taxes through the sales escrow for which sum said defendant F. J. Buckley is entitled to credit.

"17. . . . . . . . . . . . .

"18. By oral stipulation of the parties hereto, through their respective counsel of record, in open court, on January 28, 1958, it is found to be true that defendant F. J. Buckley has received the sum of $8,550.00 as rentals for said property and that said defendant F. J. Buckley is entitled to a credit on said sum of $8,550.00 in the sum of $2,800.00 for expenditures made by him in connection with the maintenance of said property and the payment of said taxes thereon."

Thereafter it was ordered, adjudged and decreed as follows:

"1. That plaintiff was entitled to exercise her right to rescind her sale of the real property hereinafter described to defendant F. J. Buckley, through his nominee G. S. Chambreau, and the grant deed executed and delivered by plaintiff to said G. S. Chambreau and that sale and said deed are hereby rescinded and cancelled;

"2. That plaintiff have judgment against defendants F. J. Buckley and E. Haiss, and each of them, in the sum of $5,750.00 and for her costs of suit herein taxed in the sum of $310.70.

"3. That defendants F. J. Buckley and E. Haiss cause Stanford Crocker, Inc., a corporation, or any other present record title holder, to execute and deliver to plaintiff a good and sufficient grant deed of the real property described as Lot 6, and the North one-half of Lot 7, in Block 19 of Boulevard Heights Tract, as per Map recorded in Book 8, page 139 of Maps, records of the County of Los Angeles, State of California, thereby transferring and conveying to plaintiff the title to said real property in the same condition as it existed at the time plaintiff so transferred and conveyed the same to said G. S. Chambreau

"4. That as a condition to paragraphs 1, 2 and 3 of this judgment plaintiff shall:

"(a) Repay to defendant F. J. Buckley the sum of $7,624.10, without interest;

"(b) Surrender to Wilshire Escrow Company, a corporation, of Los Angeles, California, as trustee under the deed of trust hereinafter mentioned, the original promissory note executed by G. S. Chambreau and dated August 9, 1955, in the principal sum of $23,000.00, payable to the order of plaintiff; and

"(c) Execute and deliver to said Wilshire Escrow Company a written request for full reconveyance of said real property hereinabove described and covered by the deed of trust heretofore executed and delivered by said G. S. Cham-

breau to plaintiff as security for the payment of the said $23,000.00 promissory note so executed and delivered by said G. S. Chambreau, hereinbefore referred to;

"5. In the event that, after thirty (30) days have expired from the entry of this judgment, defendants have not caused said Stanford Crocker, Inc., or the then record title holder of said real property, to execute and deliver to plaintiff said grant deed and the said defendant F. J. Buckley has refused to accept from plaintiff the sum of $7,624.10 then, and in that event, plaintiff is authorized to deposit said sum of $7,624.10 with the Clerk of this Court for the credit of said F. J. Buckley and the Clerk is thereupon ordered to execute and deliver to plaintiff a grant deed of the real property hereinabove described, in the names of said Stanford Crocker, Inc., a corporation, or the then record title holder of such real property and in the names of defendants F. J. Buckley and E. Haiss."

In this appeal with respect to this case, it is contended that the trial court erred in making findings that Buckley was the agent of Slusher at the time he purchased the property from her and that Buckley did not disclose to Slusher that he was not acting as her agent in the transaction and in rendering a judgment for rescission in favor of Slusher.

It is contended variously that Buckley's admitted act of suppression of the fact that he was the real purchaser did not constitute a sufficient basis for rescission because the purchaser's identity was immaterial to Slusher, with the result that Buckley's alleged failure to disclose that he was the real party in interest was not material; that Slusher had full knowledge that Buckley was not acting as her agent because it was so stated in the escrow instructions which she signed with the result that whatever agency may have previously existed was terminated, and Slusher and Buckley were, in law, strangers; that Slusher had extensive business experience and was relying in the transaction upon her own knowledge, experience, investigation and appraisal and not upon any statement made by Buckley; that the price Slusher received represented the reasonable market value of her property and that not only did Slusher sustain no injury, she was actually benefitted by being enabled to sell her property; and that the agency contract between Slusher and Buckley was invalid in that it completely lacked mutuality.

As has been pointed out previously, the trial court made specific findings supported by competent and substan-

tial evidence that Buckley solicited from Slusher the exclusive right to act as her agent for the sale of her Crenshaw property and that Slusher orally made Buckley her exclusive agent. While the agency contract was oral, this factor did not affect the validity thereof although it could have precluded its enforceability against Slusher. (See Civ. Code, § 1624; 23 Cal.Jur.2d pp. 393-394.) Buckley, by his letter to Slusher dated March 17, 1955, admitted the existence of the agency and tried to strengthen his position by thanking her for the exclusive agency and setting forth the terms upon which sale was to be made. The trial court further made specific findings that Buckley solicited and Slusher orally agreed to an indefinite extension of said exclusive agency, and that subsequently Buckley, without the knowledge or consent of Slusher, purchased said real property taking title in the name of one G. S. Chambreau.

There is substantial evidence that Buckley never directly indicated to Slusher that he was no longer acting as her agent or that he was purchasing the property for himself. At the trial, in fact, Buckley testified as follows:

"Q. By MR. BODKIN: After you became interested in buying the property yourself, Mr. Buckley, did you tell Mrs. Slusher that you were no longer making any effort to sell to a third person? A. No.

"Q. Did you ever tell her that you were no longer acting as her agent? A. I never told her at any time I was her agent or that I was not acting as her agent any longer."

" . . . . . . . . . . . .

"Q. I will ask you if at the time of your deposition you were not asked the following questions and did not reply as follows:

"'Q. By MR. MILLER: You did not tell Mrs. Slusher that you were actually the buyer, did you? A. By act I did. I was not taking title. I couldn't tell her "I am taking it in Buckley" because she was giving the deed to Chambreau.

"'Q. Why couldn't you tell her? A. Well, why should I tell her? There's no reason to tell her it's mine, when it is in the name of Chambreau. I am not taking it in my name, I was taking it in the name of Chambreau.'

"Did you so testify? A. Yes."

Buckley, having commenced to act as a real estate broker and agent for Slusher, assumed a fiduciary obligation to Slusher and could not thereafter purchase the property for

his own account without fully disclosing to Slusher that he was the purchaser.

It is established in California by a long line of cases that the principal may rescind a sale of his property concluded by an agent to himself unless the agent has fully disclosed to the principal that he is the purchaser; and a showing of actual damage by the principal is not required as a condition to rescission under such circumstances. (See *Burke* v. *Bours*, 92 Cal. 108, 112-113 [28 P: 57]; *Sterling* v. *Smith*, 97 Cal. 343, 347 [32 P. 320]; *Curry* v. *King*, 6 Cal.App. 568, 574, 575 [92 P. 662]; *Butler* v. *Agnew*, 9 Cal.App. 327, 331-332 [99 P. 395]; *Newell-Murdoch Realty Co.* v. *Wickham*, 183 Cal. 39, 43-45 [190 P. 359]; *Silver* v. *Logue*, 127 Cal.App. 565 [16 P.2d 183]; *Sands* v. *Eagle Oil & Refining Co.*, 83 Cal.App.2d 312, 320 [188 P.2d 782].)

In *Adams* v. *Herman*, 106 Cal.App.2d 92 [234 P.2d 695], this disability of the agent to purchase the principal's property was extended to encompass a purchase by the agent's wife, and at pages 99-100 it was therein stated:

". . . The proper rule, supported by authorities from many states, is stated as follows in 2 American Jurisprudence, page 208, section 257: 'The general principle which denies the agent the right, without the knowledge and consent of the principal, to become the purchaser of property which he is employed to sell for the principal is aimed at an indirect or collusive sale or transfer, as well as a direct sale or transfer to the agent. *It precludes the agent from selling or conveying to the agent's spouse,* to a corporation in which the agent has a large concealed interest, indirectly to himself in the name of a third person, and even to a clerk of the agent who is engaged in the affairs of the vendor relating to the sale of the land.' (Italics added; see, generally, 80 Am.St.Rep. 555; 62 A.L.R. 63, 68.)"

In *Ramey* v. *Myers*, 111 Cal.App.2d 679 [245 P.2d 360], a judgment for damages in favor of the seller and against Myers and Buckley was upheld in a situation where the seller was unaware that the purchaser was the nominee of realtor Buckley and Myers was a salesman of Buckley.

In view of all of the circumstances as set forth hereinabove, Buckley should have been and undoubtedly was aware that he was assuming certain risks in purchasing property from Slusher through a nominee, and we think the trial court correctly concluded that Slusher was entitled to rescind the contract.

■ The other action insofar as this appeal is concerned involves a cross-complaint by Buckley and Haiss against Chambreau, Slusher, Attorney Alvin B. Baranov, Everest Manufacturing Company, a corporation, and Alvin B. Baranov, secretary and Richard E. Larson, president thereof, which cross-complaint set forth causes of action for slander of title and conspiracy to defraud.

It was found as a fact by reason of the rescission in the other action neither Buckley nor Haiss at any time were owners of the real property, and that accordingly, they sustained no damages as the result of the acts or conduct of any of the parties sued.

In this appeal it is contended that the trial court erred in finding Buckley was not the owner of the property in December, 1955, when the title thereto was slandered and in refusing to give judgment in favor of Buckley, and that the trial court further erred in refusing to give judgment in favor of Buckley or to hear evidence of his damages.

As was remarked by the trial judge, whatever was done by the parties sued in the cross-complaint becomes "completely immaterial" because the broker and his wife did not achieve title through means which the law recognized to be proper; with the result that they could not recover damages. Under the peculiar circumstances of this case and our determination that the trial court was correct in allowing Slusher to rescind, we do not think it was error on the part of the trial court to refuse to hear evidence on the issue of such damages as may have been sustained by Buckley and Haiss.

The judgment in each action is affirmed.

Lillie, J., and Shea, J. pro tem.,* concurred.

A petition for a rehearing was denied November 5, 1959, and appellants' petition for a hearing by the Supreme Court was denied December 2, 1959.

---

*Assigned by Chairman of Judicial Council.